IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-163-D

| | | |
|---|---|---|
| BUFFLEHEAD POINT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PAMLICO COUNTY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

On November 15, 2019, Bufflehead Point, LLC ("Bufflehead Point" or "plaintiff") filed a complaint against Pamlico County, North Carolina ("Pamlico County"), Pamlico County Health Director Scott Lenhart ("Lenhart"), and the North Carolina Department of Health and Human Services ("NCDHHS"; collectively, "defendants"). See Compl. [D.E. 1]. Bufflehead Point asserts that defendants suspended septic system permits for a Bufflehead Point development in Pamlico County and thereby violated 42 U.S.C. § 1983 and the Equal Protection Clause of the United States Constitution. See id. Bufflehead Point also alleges a negligence claim. See id. On January 13, 2020, Lenhart moved to dismiss the complaint [D.E. 23] and filed a memorandum in support [D.E. 24, 25]. On February 28, 2020, Bufflehead Point responded in opposition [D.E. 30]. As explained below, the court denies Lenhart's motion to dismiss.

I.

In 2005, Bufflehead Point started to develop the Windmill Pointe subdivision ("Windmill Pointe") into 39 residential lots in Oriental, North Carolina, a city in Pamlico County. See Compl. ¶ 21. In 2008, Bufflehead Point applied to the Pamlico County Health Department for septic system permits ("Permits") for each lot. See id. at ¶¶ 22–23. A real estate developer must get Permits to

install septic systems on residential lots. See id. Although the NCDHHS "oversees the implementation of rules governing onsite water protection infrastructure, including septic systems" and the issuance of Permits, the county health department is responsible for maintaining all documents related to the Permits. Id. at ¶¶ 17–20, 34. In 2008, the registered environmental health specialist at the Pamlico County Health Department issued Permits for all 39 Windmill Pointe residential lots. See id. at ¶ 24. Bufflehead Point thereafter installed septic systems on all 39 Windmill Pointe lots. See id. at ¶ 28.

After a pause in development due to the 2008 recession, Bufflehead Point resumed marketing Windmill Pointe lots in 2017. See id. at ¶¶ 30–33. In February 2018, defendants told Bufflehead Point that certain Windmill Pointe documents, including the Permits, were missing. See id. at ¶ 40. Bufflehead Point alleges that the Pamlico County Health Department "has experienced record-keeping problems for many years," and that Lenhart made public comments acknowledging the record-keeping problems and Pamlico County's potential liabilities in light of those problems. See id. at ¶¶ 35, 38.

On February 27, 2018, Bufflehead Point representatives met with Lenhart, among others, to discuss issues concerning the missing Permit documents. See id. at ¶ 43. At the meeting, the parties disagreed about whether NCDHHS issued Permits for the 39 Windmill Pointe lots. See id. at ¶¶ 44–45. Nevertheless, Bufflehead Point agreed to help Pamlico County and NCDHHS locate the Windmill Pointe Permits. See id. at ¶ 46.

On March 22, 2018, Pamlico County and NCDHHS issued a Notice of Intent to Suspend Improvement Permits ("Notice") for the Windmill Pointe lots. See id. at ¶ 48. The Notice states, inter alia, that the Pamlico County Health Department "does not have an application for [the Permits], including a site plan or plat, for [Windmill Pointe]" in violation of North Carolina law.

2

[D.E. 1-5] 2; see Compl. ¶¶ 49, 53. Bufflehead Point alleges that Pamlico County Health Department issued the Notice without contacting Bufflehead Point and before conducting any investigation, and that Lenhart personally approved the Notice. See Compl. ¶¶ 48, 61, 80–84. Moreover, Lenhart does not know whether the Windmill Pointe septic systems comply with North Carolina law, and admitted that "they seem to be functioning properly." Id. at ¶¶ 48, 61. Lenhart also admitted that he had the Pamlico County documents concerning Windmill Pointe at one time, but that the documents "were probably purged for one reason or another." Id. at ¶¶ 75–79.

Bufflehead Point alleges that defendants, including Lenhart, have not issued Notices for other Pamlico County subdivisions or property owners, even though the Pamlico County Health Department does not have Permit documentation for certain subdivisions and property owners. See id. at ¶¶ 100–02. Bufflehead Point alleges that Lenhart's decision to issue or approve the Notice has devalued the Windmill Pointe lots, stopped development, and hindered Bufflehead Point's marketing efforts. See id. at ¶¶ 108–14. Bufflehead Point makes two claims against Lenhart: a section 1983 equal protection claim and a state-law negligence claim. See id. at ¶¶ 141–48, 160–73.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and

reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016). Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The motion to dismiss requires the court to consider Bufflehead Point's state-law claim against Lenhart, and the parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina.

4

See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[1] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Lenhart argues that Bufflehead Point has not "described the violation of any actual constitutional right." [D.E. 25] 4. Specifically, Lenhart asserts that Bufflehead Point "does not specify exactly what type of constitutional claim" is at issue, and that Bufflehead Point "appears" to state " a due process claim of some sort." Id. at 7.

The complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" concerning an equal protection claim. Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In the third cause of action, Bufflehead Point alleges that Lenhart "knew that his actions were in derogation of the clearly

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

5

established rights, privileges, and immunities guaranteed ... by the United States Constitution." See Compl. ¶ 145. Bufflehead Point incorporates into the third cause of action its allegations concerning the equal protection clause, which appear in the second cause of action concerning equal protection claims against Pamlico County (i.e., Lenhart's employer). See id. at ¶¶ 128, 130, 145. Moreover, Bufflehead Point alleges that Lenhart, along with his co-defendants, issued the Notice to Bufflehead Point and did not issue Notices to other subdivisions and property owners in Pamlico County who are also missing Permits. See id. ¶¶ 96–103. Accordingly, Bufflehead Point plausibly alleges an equal protection claim under section 1983. See City of Cleburne, v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Sansotta v. Town of Nags Head, 724 F.3d 533, 548 (4th Cir. 2013); E.I. du Pont de Nemours & Co., 637 F.3d at 447–48; cf. Segal v. Fifth Third Bank, N.A., 581 F.3d 305, 310 (6th Cir. 2009).

Alternatively, Lenhart argues that he is entitled to qualified immunity. See [D.E. 25] 4–8. Lenhart is entitled to qualified immunity under section 1983 unless "(1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quotation omitted). "'Clearly established' means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Id. (quotation omitted); see, e.g., City of Escondido v. Emmons, 139 S. Ct. 500, 503–04 (2019) (per curiam).

Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quotation

6

and citation omitted); see Wesby, 138 S. Ct. at 590; Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). In the Fourth Circuit, "existing precedent" includes precedent of the United States Supreme Court and the Fourth Circuit. See Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 176 (4th Cir. 2010).[2]

"When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." Pearson v. Callahan, 555 U.S. 223, 238–39 (2009). After all, at the pleading stage, a plaintiff must state only "a claim that is plausible on its face." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 396 (4th Cir. 2014) (emphasis omitted); see Iqbal, 556 U.S. at 678. As a result, a defendant "faces a formidable hurdle and is usually not successful" when he asserts qualified immunity at the pleading stage. Owens, 767 F.3d at 396 (quotation omitted).

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish an equal protection claim, a plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (citation omitted). Purposeful discrimination "implies that a decisionmaker ... selected or affirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Personnel Admin. of Ma. v. Feeney, 442 U.S. 256, 279

---

[2] The United States Supreme Court has held that its precedent qualifies as controlling for purposes of qualified immunity. See Wesby, 138 S. Ct. at 591–93 & n.8. The Supreme Court has reserved judgment on whether decisions of a federal court of appeals are a source of clearly established law for purposes of qualified immunity. See id.; Kisela, 138 S. Ct. at 1152–54; Taylor v. Barkes, 135 S. Ct. 2042, 2044–45 (2015) (per curiam); City & Cty. of S.F. v. Sheehan, 135 S. Ct. 1765, 1776 n.4 (2015); Carroll v. Carman, 574 U.S. 13, 16–17 (2014) (per curiam).

7

(1979); see C&H Co. v. Richardson, 78 F. App'x 894, 902 (4th Cir. 2003) (per curiam) (unpublished). If a plaintiff demonstrates intentional unequal treatment, the court must then determine whether the treatment is justified. See Morrison, 239 F.3d at 654.

The record is insufficient to conclude that Lenhart is entitled to qualified immunity. Bufflehead Point has plausibly alleged that Lenhart "personally approved the issuance of the [Notices]," that Lenhart did not approve Notices for similarly situated subdivisions and property owners, and that Lenhart chose to issue the Notice, at least in part, to harm Bufflehead Point. Compl. ¶¶ 48, 61, 75–79, 80–84, 96–103; see Iqbal, 556 U.S. at 678; Owens, 767 F.3d at 396. Accordingly, the court denies Lenhart's motion to dismiss concerning Bufflehead Point's equal protection claim under section 1983. On a more fully developed record, the court will revisit whether Lenhart has qualified immunity.

B.

Lenhart argues that he is entitled to public official immunity concerning Bufflehead Point's negligence claim. See [D.E. 25] 7–10. Specifically, Lenhart contends that "the actual facts alleged in the [c]omplaint do no support [Bufflehead Point's] conclusory allegations that Mr. Lenhart acted with malice, corruption, or outside the scope of his duties." Id. at 9 (footnote omitted).

To show a defendant's negligence, a plaintiff must prove the typical elements of "(1) duty, (2) breach, (3) causation, and (4) damages." Bryant v. Adams, 116 N.C. App. 448, 465, 448 S.E.2d 832, 841 (1994); see Holley v. Burroughs Wellcome Co., 318 N.C. 352, 355, 348 S.E.2d 772, 774 (1986); Morgan v. Cavalier Acquisition Corp., 111 N.C. App. 520, 528, 432 S.E.2d 915, 919 (1993).

Under North Carolina law, individuals who are public officials may be entitled to immunity from mere negligence claims. Public officials are those individuals "engaged in the performance of governmental duties involving the exercise of judgment and discretion." Smith v. Hefner, 235 N.C.

1, 7, 68 S.E.2d 783, 787 (1952); see Isenhour v. Hutto, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999). A county health director is a "public official." Satorre v. New Hanover Cty. Bd. of Comm'rs, 165 N.C. App. 173, 179, 598 S.E.2d 142, 146 (2004); see Meyer v. Walls, 347 N.C. 97, 111–14, 489 S.E.2d 880, 888–89 (1997). Although a public official may be immune from mere negligence claims, a public official "is liable for actions taken while engaged in the performance of governmental duties if those actions were corrupt, malicious, or outside the scope of his duties." State v. Kinston Charter Acad., 836 S.E.2d 330, 341 (N.C. Ct. App. 2019); see Hefner, 235 N.C. at 7, 68 S.E.2d at 787. "[A] malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Wilcox v. City of Asheville, 222 N.C. App. 285, 289, 730 S.E.2d 226, 230 (2012); see Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984); Estate of Burgess ex rel. Burgess v. Hamrick, 206 N.C. App. 268, 276, 698 S.E.2d 697, 703 (2010).

Bufflehead Point plausibly alleges that Lenhart was negligent when he did not investigate the disappearance of the Windmill Pointe documents, and when he issued the Notice. See Compl. ¶¶ 48, 50–53, 61, 75–84. Bufflehead Point also plausibly alleges that Lenhart wantonly issued the Bufflehead Point Notice, and did not issue Notices to similarly situated subdivisions or property owners, with an intent to injure Bufflehead Point. See id. Thus, the court denies Lenhart's motion to dismiss Bufflehead Point's negligence claim. On a more fully developed record, the court will revisit Lenhart's assertion of public official immunity.

III.

In sum, the court DENIES defendant's motion to dismiss [D.E. 23].

SO ORDERED. This 4 day of May 2020.

JAMES C. DEVER III
United States District Judge